In the Matter of the Application of the NEW YORK DISTRICT RAILWAY COMPANY to Appoint Commissioners, etc.

The act of 1880 (Chap. 582, Laws of 1880), " providing for excavating and tunnelling * * * for transportation purposes within the villages and cities of this State," authorizes and regulates underground street railways.

A railroad confined within the limits of a city and proposed to be built exclusively under the surface of the street thereof, is a street railway within the meaning of the provision of the State Constitution (art. 3, § 18), declaring that no law shall authorize the construction of a street railroad except upon the condition of the consent of the owners of one-half in value the property bounded on and the consent also of the local authorities having control of the street, or in lieu of the consent of the property holders, in case it cannot be obtained, the determination of commissioners appointed by the court that the road ought to be constructed.

As applicable to such a road, therefore, the provision of said act declaring that the determination of commissioners, confirmed by the court, "may be taken in lieu of the consent of said authorities" is unconstitutional and invalid.

The general railroad act of 1850 (Chap. 140, Laws of 1850), has no application to street railroads.

Conceding it does so apply, the authority was taken away so far as relates to street railroads in the city of New York by the act of 1860. (Chap. 10, Laws of 1860.)

The general surface act of 1884 (Chap. 252, Laws of 1884), while permitting such an appointment of commissioners, is limited wholly to surface road and so cannot be applied in aid of an underground street railroad.

Where an order was applied for, under said act of 1880, for the appointment of commissioners, to determine whether an underground street railroad in said city ought to be built without the consent of the municipal authorities or the owners, which application was denied. *Held*, that an order could not be granted to stand for the consent of the property owners alone; that the order must have the statute effect or none, and that, so limited, it would not be the order which the statute authorized.

*It seems* the said act of 1880 may stand as an authority for the construction of an underground street railroad upon condition of the assent of the city authorities and the owners of half the abutting values, and rejecting all the provisions for the appointment of commissioners whose order shall be a substitute.

(Argued June 29, 1887; decided October 4, 1887.)

APPEAL by the petitioner, the New York District Railway Company, from an order of the General Term of the Supreme Court in the first judicial department, made October 27, 1886, which denied the application of the petitioner for the appointment of three commissioners to determine whether its railroad ought to be built.   (Reported below, 42 Hun, 621.)

The application was made under the provisions of section 1, of chapter 582 of the Laws of 1880 (commonly called the Tunnelling Act), which provides that, on the refusal of property owners to consent, commissioners may be appointed, and their determination, confirmed by the court, may be taken in lieu of the consent of the public authorities and property owners.

The petitioner was incorporated under the General Railroad Act (Chap. 140, Laws of 1850), " to construct a railroad in the city of New York, beginning on Broadway, at a point 190 feet southerly from the southerly line of Morris street, in the city and county of New York; thence by the line of Broadway to the southerly line of Twenty-third street; thence by the most direct route to the intersection of the northerly line of Broadway and Twenty-sixth street; and thence by the line of Broadway to the northerly end thereof; with a branch line from the intersection of Broadway and Twenty-third street to the intersection of Madison avenue and Twenty-sixth street; and thence northerly by the line of Madison avenue to Harlem river."

By chapter 582 of the Laws of 1880, it is provided that " whenever, according to the route and plans adopted by any railroad company, organized under the General Railroad Act, for the construction of its road it shall be necessary or proper to build said road or any part thereof under ground, it shall be lawful for said company to enter upon and acquire title to

and use such lands under water and upland * * * as shall be necessary for the purposes herein mentioned, and they shall have the power to * * * purchase or acquire in the manner now provided by law, such lands or rights or easements in land along their said route, upon, over or beneath the surface thereof as may be necessary for the building of their said road; * * * and provided further that whenever such road or any part of the same is intended to be built within the limits of any city * * * of this State, and to run by means of a tunnel underneath any of the streets, roads or public places thereof, said company, before building the same underneath any of said streets, roads or public places, shall obtain the consent of the owners of one-half in value of the property bounded on the line, and the consent * * * of the proper authorities having control of said streets, roads and public places, or in case such consent of the owners of property bounded on the line cannot be obtained, the General Term of the Supreme Court in the district in which such city * * * is situated, may, upon application, appoint three commissioners who shall determine, after hearing all parties interested, whether such railroad ought to be built underneath such streets, roads or public places, or any of them, and in what manner the same may be so built with the least damage to the surface and to the use of the surface by the public; and the determination by said commissioners, confirmed by the court, may be taken in lieu of the consent of said authorities and property owners."

The petition alleges, among other things, that according to the routes and plans adopted by petitioner for the building of its road, it is necessary to build the same under the streets, roads and public places above mentioned; that petitioner has been unable to obtain the consent required by the act of 1880, "because of the refusal of the owners of more than one-half in value of the property bounded on the main line of your petitioner's said railroad to consent hereto."

The petitioner asks for the appointment of three commissioners to determine whether its railroad ought to be allowed to be built underneath the streets aforesaid, or any of them,

and in what manner the same may be so built with the least damage to the surface and to the use of the surface by the public, and further, to report their conclusions as to what compensation, if any, should be made to the said city of New York by the petitioner, if allowed to build its road.

The application was opposed by abutting property owners, the Mayor, Aldermen and Commonalty of the city of New York, and certain railroads, claiming prior exclusive privileges in Broadway, who filed answers raising various objections to the appointment of commissioners. The General Term denied the motion on the ground of the unconstitutionalty of the act of 1880.

*Grosvenor Lowrey* and *Ch. Francis Stone* for New York District Railway Company, appellant. The subterranean railroad contemplated by the act of 1880, shown in the plans of the petitioner, is not a " street railroad " within the meaning of article 3, section 18 of the Constitution. (*Story* v. *N. Y. El. R. R. Co.* 90 N. Y. 161; *Coverdale* v. *Charlton, L. R.* 4 Q. B. D. 104; *McCarthy* v. *City of Syracuse*, 46 N. Y. 199; *In re Gilbert E. R. Co.* 70 id. 373; *Goodson* v. *Richardson*, 9 Ch. L. R. 221, 223; 3 Kent's Comm. 573 [12th ed.] side page 433; *Goodtitle* v. *Alker*, 1 Burr. 143, 146; *Cattle* v. *Stockton Water - Works*, L. R., 10 Q. B. 455; *Robert* v. *Sadler*, 5 N. Y. 594; Co. Litt. 4; *Lahr* v. *Met. El. Ry. Co.*, Ry. Cor. L. J. 148; Smith's Const. L. 512; 55 N. Y. 375; 13 Phila. R. 130; *Hoyt* v. *Sixth Ave. R. R. Co.*, 1 Daly 528; Laws 1850, p. 211, § 1; 224, § 28, subd. 5; 225, § 28, subd. 7; Laws 1850, chap. 140, §§ 1, 27, 28, subds. 9, 36, 37; *In re N. Y. Cable Co.*, 4 N. Y. 311; Ferry Leases & R. R. Grants, N. Y., 1886, 251, 253, 294, etc.; Laws of 1854, p. 323; Laws of 1860, p. 232; State Engin. Rep., Feb. 20, 1867, Ass. Doc., 1867, No. 114, p. 3; Laws 1867, chap. 906; State Engin. Rep., 1868, 65, 471, etc.; 1 Laws 1869, chap. 917, §§ 3-7; 1 Laws 1869, chap. 165, p. 303, § 25; 1 Laws 1868, p. 464; 2 Laws of 1872, p. 1798, § 9; *N. Y. City R. T. Ry.* Laws of 1872, p. 1985, § 7; *Brook-*

*lyn St. Tr. Co.*, 2 Laws of 1871, 2160, 2162, §§ 1, 6; *Wiggins v. E. St. L. R. R.*, 107 Ill. 455.) The construction given to the prohibition of the Constitution by the legislature in the passage of the tunnel act, is itself ground for upholding the constitutionality of its interpretation of the prohibition. (55 N. Y. 54; 50 id. 553; 14 Mass. 340; 17 N. Y. 235; 23 Wend. 166; *In re Gilbert El. Ry. Co.*, 70 N. Y. 370, 371; *Sage v. Brooklyn*, 89 id. 200; *Settle v. Van Evera*, 49 id. 285; *People v. Mann*, 97 id. 536; *People v. Carr*, 100 id. 236; *Donahugh's App.*, 86 Penn. 310.) The tunnel act is not void in point of form because the legislature has failed to express in the act the condition imposed by the Constitution. (Const., art. 3, §§ 16, 17, 20; *Clark v. Blackmar*, 47 N. Y. 150.) The act, if void at all, is void only as to the particular part of it which is unconstitutional. (*In re Middletown*, 82 N. Y. 196, 204.) The record contains no legal evidence that any insurmountable obstacle to the appointment of commissioners exists. (*In re Thirty-fourth St. R. R. Co.*, 102 N. Y. 354.)

*Esek Cowen* for appellant. Chapter 582 of the Laws of 1880 does not authorize the construction or operation of a street railroad. (*McCarthy v. Syracuse*, 46 N. Y. 199; *Heath v. Des Moines & St. L. Ry. Co.*, 61 Ia. 11.) The road proposed to be built by the petitioner, by virtue of its organization under the general railroad act, is not a "street" railroad within the meaning of the Constitution. (*G. R. & Ind. R. R. Co. v. Heisel*, 38 Mich. 62; *Wiggins F. Co. v. E. St. L. U. R. R. Co.*, 107 Ill. 450; *In re Kings Co. El. Ry. Co.*, 82 N. Y. 99.) The provision of said act that the decision of the Supreme Court commissioners may be taken, in lieu of the consent of the local authorities, may be void. That does not avoid the entire act. (*People ex rel. v. Kenney*, 96 N. Y. 294; *People ex rel. v. Briggs*, 50 id. 553; *In re Broadway S. R. R. Co.*, 34 Hun, 414; *In re Thirty-fourth Street R. R. Co.*, 102 N. Y. 354.) The statute does not provide for or contemplate any hearing of opposing parties upon the application to appoint commissioners. (*In re N. Y. El. R. R. Co.*, 70 N. Y. 327, 356; *In re Thirty-fourth Street R. R. Co.*, 102 id. 354.)

*Edward W. Paige* for the Broadway Underground Connecting Railroad Company, respondent.   The words "street railroads," as used in article 3, section 18 of the Constitution, are not applicable alone to surface railroads.   (*In re N. Y. El. R. R. Co.*, 70 N. Y. 354; *In re Gilbert El. R. R. Co.*, id. 361, 372; *In re Kings Co. El. R. R. Co.*, 82 id. 95, 98; 41 Hun, 425; 7 Cent. Rep. 232.)   So much of chapter 582 of the Laws of 1880 as authorizes the construction of street railroads is unconstitutional and void.   (*Stuart* v. *Palmer*, 74 N. Y. 183, 188.)   The act under which the application for the appointment of commissioners was made in the court below was unconstitutional, in that it attempted to substitute the report of commissioners, when confirmed by the court, for the consent of the local authorities and of the property owners. (Const. art. 3, § 18, last subd.; *In re Thirty-fourth Street R. R. Co.*, 102 N. Y. 343.)

*Edward B. Thomas* for New York Arcade Railroad Company, respondent.   When a railway company is, by special act, authorized to construct its road in certain streets, it is to be deemed a practical location by the legislature.   (*In re Coney I. R'y Co.*, 12 Hun, 451; 2 Wood's R'y Law, 748.) When a line has been duly located another company may not, in any manner, interfere with it.   (*T., etc., R. R. Co.* v. *W., etc., R. Co.*, 12 Phil. 642;   *H. R. R. Co.* v. *L. & H. R. R. Co.*, 118 Mass. 391; *W. & N. R. R. Co.* v. *R. R. Com'rs,* id. 567; *B. & M. R. R. Co.* v. *L., etc., R'y Co.*, 124 id. 368; *M., etc., R. R. Co.* v. *Blair*, 1 Stockt. [N. J.] 635;   *C. C. R. R. Co.* v. *Moss*, 23 Cal. 323; *Packer* v. *S. & E. R. R. Co.*, 19 Penn. 211–220; *Coe* v. *N. J. M. R'y Co.*, 4 Stewart N. J. Eq. 146; 2 Wood's R'y Law, 750; *In re R. R. Com'rs*, 66 N. Y. 418; *N. J. S. R. R. Co.* v. *L. B. Com'rs*, 10 Vroom. 28; *M. & E. R. R. Co.* v. *Cent. R. R. Co.*, 2 id. 214; *R'y Co.* v. *Alling*, 99 U. S. 463; *Boston W. T. Co.* v. *B. & W. R. R. Co.*, 23 Pick. 366; *In re B. & A. R. R. Co.*, 53 N. Y. 573; *In re N. Y. C. & H. R. R. R. Co.*, 77 id. 256.)   The legislature has expressly reserved the rights of the Arcade Company.   (Laws

of 1886, chap. 312, § 14.)   Chapter 582, of the Laws of 1880,
called the "Tunnel Act" is unconstitutional.   (*State* v.
*Davenport, etc., R'y Co.*, 47 Ia. 507; *In re Thirty-fourth
Street R'y Co.*, 102 N. Y. 350.)

*D. J. Dean* for the City of New York, respondent.   The
act, chapter 582 of the Laws of 1880, violates section 18 of
article 3 of the Constitution.   (*Davis* v. *Mayor, etc.*, 14 N. Y.
506; *People* v. *Kerr*, 27 id. 194; *In re Kings Co. El. R. R.
Co.*, 82 id. 95; *In re N. Y. El. R. R. Co.*, 70 id. 354; *In re
Gilbert El. R. R. Co.*, id. 361, 372; *People ex rel. Wood* v.
*Lacombe*, 99 id. 49; *People ex rel. Twenty-third Street R. R.
Co.* v. *Com'rs Taxes*, 95 id. 558; *Birch* v. *Newbury*, 10 id.
389; *O. S. Co.* v. *Dolloway*, 21 id. 461; *People* v. *Potter*,
47 id. 375; *People* v. *Green*, 2 Wend. 274; *People* v. *Brund-
age*, 78 N. Y. 406.)

*Henry D. Sedgwick* for the New York Underground Rail-
way Company, respondent.   The provisions in the General
Railway Law in regard to the time of commencing and com-
pleting railroads organized under it do not affect the New York
Underground Railway Company, because its charter contains
all the provisions by which such commencement and completion
are authorized and controlled, and the corresponding provisions
of the General Railway Act, being inconsistent therewith, have
no application.   (Charter, chap. 230, Laws of 1868, § 3, as
amended by chap. 824, Laws of 1869, §§ 7, 11; *Vesscher* v.
*H. R. R. Co.*, 15 Barb. 37; *Mosier* v. *Hilton*, 15 id. 657;
*H. R. R. Co.* v. *Outwater*, 3 Sandf. 689; *Clarkson* v. *H. R.
R. Co.*, 12 N. Y. 304.)   The New York Underground Com-
pany has "acquired and is vested with an exclusive right or
franchise, to construct, maintain or operate a railroad under
any portion of Broadway."   (*Lahr* v. *Met. El. R. Co.*, 104
N. Y. 268, 290; *Brookly St. Tr. Co.* v. *City of Brooklyn*,
78 id. 524, 533.)   The railroad proposed by the petitioner is a
street railroad in the sense of the act.   (*In re El. R. Co.*, 70
N. Y. 327, 354, 372; *Kings Co.* v. *El. R. Co.*, 82 id. 95, 98, 99.)

*Horace Russell* for Hilton and others, abutting owners, respondents. The unconstitutional part cannot be severed from the constitutional portions of the act of 1880. (Cooley on Const. Lim., 178; *In re Middletown*, 82 N. Y. 203; *People* v. *Porter*, 90 id. 68; *Comm.* v. *Potts*, 79 Penn. St. 164, 168; *Wynehamer* v. *People*, 13 N. Y. 378.) The constitutional validity of a law is to be tested, not by what has been done under it, but what may, under its authority, be done. (*Stewart* v. *Palmer*, 74 N. Y. 183, 188.) Article 3, section 18, of the Constitution applies to an underground railroad built in the streets of a city. (*People* v. *Potter*, 47 N. Y. 375; *People* v. *Fancher*, 50 id. 288; *In re Kings Co. El. R. R. Co.*, 82 id. 95; *In re El. R. R. Co.*, 70 id. 354, 361; Rapid Tr. Act Laws of 1875, chap. 606, § 4; *In re Gilbert El. R. R. Co.*, 70 N. Y. 372; *People* v. *Green*, 2 Wend. 274; *People* v. *Carr*, 100 N. Y. 243; *People* v. *Brundage*, 78 id. 406; *Cohens* v. *Virginia*, 6 Wheat. 420.) The company has under its charter no right to build and operate only a portion of the line by law. A company can be compelled by *mandamus* to operate its whole line, and has no right to abandon any part of it. (*People* v. *A. & V. R. R. Co.*, 24 N. Y. 261; *Union Pac. R. R. Co.* v. *Hall*, 91 U. S. 343; *State* v. *H. & N. H. R. Co.*, 29 Conn. 538; *In re Thirty-fourth Street R. R. Co.*, 102 N. Y. 343, 354.) The petition is defective in failing to show that the route has been properly adopted. (Laws of 1880, chap. 582, § 1; Laws of 1850, chap. 140, § 22; Laws of 1872, chap. 560 § 1.)

FINCH, J. No act of the legislature warrants this application except that of 1880 (Chap. 582) under which alone it was made, and which furnished the sole authority for the appointment sought. The general act of 1850 (Chap. 140) provides only for commissioners of appraisal, and not at all for officers who are to determine the necessity of the road, and whose order is to take the place of requisite consents. The Rapid Transit Act of 1875 (Chap. 606) does provide for similar commissioners, but vests their appointment in the Mayor and not in the Supreme Court. The General Surface Act of 1884

(Chap. 252) permits such an appointment but is limited wholly to surface roads and cannot aid the petitioner. Its application must stand or fall upon the authority which it has invoked, and if for any reason that is insufficient, the denial of the application must be affirmed.

The petition proceeds upon the assumption that both the consent of one-half of the abutting values and that of the city authorties are essential to its rights of construction and operation; that one, at least, it has been unable to obtain; and that as a substitute for both it seeks the appointment of commissioners whose order may supply the existing defects. If for any reason the company has rights which are independent of such an order, or can obtain the needed consents, the application was superfluous and no injury has followed its denial. It appears to be conceded that, if the act of 1886 be deemed to authorize the construction and operation of a street railway, it is unconstitutional so far at least as it authorizes the appointment of commissioners, whose order shall be a substitute for the consent of the city authorities. The constitutional amendment of 1874 (Art. 3, § 18) provides that "no law shall authorize the construction or operation of a street railroad" except upon the condition of the two consents referred to, and permits the order of the court confirming that of the commissioners to stand in the place of the landowners' consents only. The act of 1880 makes such order a substitute also for the consent of the authorities. But it is contended, first, that the act of 1880 does not authorize any railway at all, and operates only to amend and restrict authorities already conferred; and, second, that if it does authorize the construction and operation of a railway, it is one which is not a street railway, but of a different character to which the constitutional provision does not apply.

We have reached the conclusion that the act authorizes and regulates underground street railways in a city or village, and that the appellant's road is such a railway. Its line lies wholly in the city of New York, and its very description in the articles of association and in the petition strongly suggests

its character.  It begins "*on* Broadway, at a point one hun-
dred and ninety feet southerly from the southerly line of
Morris street;" "thence *by the line* of Broadway to the south-
erly line of Twenty-third street; thence by the most direct
route to the *intersection* of the northerly line of Broadway
and Twenty-sixth street; thence by the line of Broadway to
the northerly end thereof."  The branch line has a similar
description, and both are so identified with the streets as to
have no description separate from them.  The route of the
road is thus *on* these streets, although beneath their surface,
and it is intended to subserve many of the principal purposes
to which they are devoted, and to share with them in their
utilities and burdens.  The transfer of passengers and freight
from one part of the city to another, giving freedom of access
to all localities and enabling transit by horse power, is one of
the main uses of a city street.  The underground road renders
it possible to manage this movement without change of line or
locality by the use of steam, and when in full operation will
subserve to a great degree the ordinary street uses and pur-
poses.  This fact the law of 1880 recognizes, and identifies the
railway with the street by its third section.  That explicitly
declares that "the use of the streets and docks and lands,
beneath which said railroad is constructed, and the right of
way beneath the same for the purpose of said railroad, shall be
considered, and hereby is declared, a public use consistent
with, and one of the uses for which, its streets, avenues and
docks are publicly held."  The legislature seems to have
deemed it wise to make the underground road a part of the
streets, and its operation a street use, by direct enactment.
The railway in return reaps its own benefit from this connec-
tion with the streets.  It follows them because, the assent of
the authorities once gained, it is obliged to buy or condemn no
land for its line, since usually the city owns the fee, and it
more readily finds its passengers and patronage from its
location on the streets.  If now we turn to its manner of con-
struction we observe that it proposes to remove the present
surface of the street, and make its own roof that surface in

the future. Not merely is the easement of the public affected temporarily by the process of construction, but permanently by changing wholly the support of that surface. We have often held that the right of the public in the streets of a city extends to and embraces, besides the support of the surface, the necessary sewerage and room for water and gas pipes and the like; and the right to lay and maintain these is an important part of the public easement. All of these the petitioner proposes to remove, and place them in a new position more convenient for its purpose. It is estimated that this one interference with the street will cost the company $750,000 a mile. Not only that, but openings are to be made in the street for purposes of ventilation, which must permanently remain, and other openings for access must be constructed and continue to exist. When the work is all done the street will consist of two stories or surfaces, one carrying the ordinary traffic and movement, lessened by so much as is diverted to the swifter transit of the other, and both together will do what one alone did to the extent of its capacity.

Such a road is to be deemed a street railway, not only because it subserves street purposes and reaps the benefit of street easements, and occupies and modifies the street surface, but also because it is fully within the mischiefs which the constitutional provision was designed to redress and prevent. That evil was indicated by the character of the remedy applied, which was to forbid all such constructions, except with the consent of the authorities, and also of the adjoining owners to the extent of one-half of the abutting values, or an order of the court as a substitute for such last consent. An ordinary railway terminating in or passing through the streets of a city or village, would occupy them but slightly and be concentrated in a single limited locality. And yet, since even such partial occupation might work injury to the public right, the consent of the city authorities is made requisite as a guard and protection. But street railways may occupy every street in a city and iron the whole surface, or spin their webs in the air over every avenue, or undermine the entire system of city

streets.    To authorize such is to inflict injury upon adjoining lot owners, in greater or less degree, and hence the consent of a due proportion of these was required by the Constitution, or, instead, the order of selected commissioners confirmed by the court.   Where the railway runs under the streets, the adjoining owners are as much and as dangerously affected as where it runs on their surface or above them.   Whether the new surface is safe and sufficient, or weak and perilous, and invites or frightens away passage ; whether the openings obstruct or hinder access to the abutter, or pour out through the ventilators smoke and steam upon his premises ; whether his vaults and foundations will remain safe and secure, or be undermined, or weakened by vibration ; whether his gas and water supply will continue ample and convenient, and the new sewerage work him no injury ; all these are to him questions of vital importance, affecting his comfort and convenience, the success of his business and the value of his property.   The same reasons which dictated a constitutional protection against roads on or above the surface of the streets, apply to those which are built beneath in the manner here contemplated, and these should justly be deemed street railroads within the meaning of that phrase as used in the Constitution.   The rapid transit act, passed very soon after the constitutional amendment, applies its provisions to roads under as well as on or above the surface, and so tends to support our conclusion.

The act of 1880 contemplates and regulates just such an underground railway as is now sought to be constructed.   It in terms relates to one lying wholly within city limits, running beneath its streets, cutting out and replacing their surface and leaving in them openings for access and ventilation.   If the act authorizes any railway at all, it authorizes a street railway within the terms of the constitutional prohibition.   But it is claimed that it authorizes no railway whatever, and for that reason escapes the control of the fundamental law.   The company's counsel argue that it gets its authority for the construction and operation of its underground road, not from the act of 1880, but from the general act of 1850, under which it

was organized. But that act, as we have held, has no application to street railroads (*N. Y. Cable Co.* v. *Mayor, etc.*, 104 N. Y. 1), and, if it had, the act of 1860 (Chap. 10) takes away the authority so conferred, for it provides that " it shall not be lawful hereafter to lay, construct or operate any railroad in, upon or along any or either of the streets or avenues of the city of New York, wherever such railroad shall commence or end, except under the authority and subject to the regulations and restrictions which the legislature may hereafter grant and provide." Having held that appellant's road is a street railway, and shown that it is planned to be built in and along the city streets, it follows that it has and can have no authority to construct its proposed road under the act of 1850; and if it does not get it under the act of 1880, it has no authority at all and no standing before the court. I think that the truth may be that the appellant derived its corporate existence from the act of 1850, but certainly not its right to construct its contemplated road; that such right could only come from the rapid transit act or the act of 1880, and that the latter is an act which authorizes the construction and operation of a street railway, and so is within the constitutional provision.

It is further said, however, that only so much of the act of 1880 is invalid as makes the order of the court confirming the report of the commissioners stand for the consent of the authorities, and that the order may be granted and stand for the consent of the property owners alone. We cannot see our way to that conclusion. The order, when made, is a single thing, which must have the statute effect or none. We cannot divide or mutilate it without changing its inherent character, purpose and effect. Limited to the consent of the land owners, it would be a good order, but not the order which the statute authorized. The legislature has declared that when made it shall stand for two things. We are asked to say that it shall not, bnt only for one. If we do that, we invade the domain of the legislature; we change its mandate as to the effect of the order; it ceases to be the order authorized, and becomes another and different one. It is not the case of two

independent provisions, one of which may be rejected without affecting the remainder of the act, for we cannot lessen the effect of the order without maiming the order itself and its statutory character. Very possibly, the act may stand as an authority for the construction of an underground street railway upon the condition of the assent of the city authorities and the half of abutting values, and rejecting all the provisions for the appointment of commissioners, whose order shall be a substitute. Further than that we do not deem it our duty to go.

The order should be affirmed, with costs.

All concur.

Order affirmed.