# THE UNDERGROUND RAILROAD OF THE CITY OF NEW YORK v. THE CITY OF NEW YORK.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 150. Argued January 29, February 23, 24, 1904.—Decided March 21, 1904.

Where the sole ground on which the jurisdiction of the Circuit Court is invoked is that the case arises under the impairment of contract clause of the Constitution of the United States, and the facts set up by complainants are, as matter of law, wholly inadequate to establish any contract rights as between them and the State, no dispute or controversy arises in respect to an unwarranted invasion of such rights and the bill should be dismissed for want of jurisdiction.

The mere filing of a map and profile, and the payment of the regular incorporation tax, by a company, organized under the general railroad law of 1850 of New York, but which did not obtain the consents of municipal authorities or of abutting property owners or substituted consent of the Supreme Court, or acquire any property by condemnation, did not create

a contract with the State for the exclusive use of the space included in the map and profile, and a subsequent act of the State authorizing the construction of a railroad partly over the same route, does not violate the impairment of contract clause of the Constitution of the United States.

THE facts are stated in the opinion of the court.

*Mr. Roger Foster* for appellant:

The Circuit Court had jurisdiction of the bill. All it is necessary to show in order to secure a reversal of the decree is that the complainants claim a franchise and that all of their objections to the constitutionality of the Rapid Transit Act are not so manifestly frivolous and without color of right as conclusively to prove bad faith upon their part. *Swafford* v. *Templeton,* 185 U. S. 487, 493, 494; *Riverside & A. Ry. Co.* v. *City of Riverside,* 118 Fed. Rep. 736, 740; *City Railway Co.* v. *Citizens' Street R. R. Co.,* 166 U. S. 557, 563; *Pacific El. Co.* v. *Los Angeles,* 118 Fed. Rep. 746, 752.

Having jurisdiction of the Federal question raised by the bill, the court had also jurisdiction of the whole bill including all questions that were not Federal. *Omaha Horse Ry. Co.* v. *Cable Tramway Co.,* 32 Fed. Rep. 727, 729; *Louisville Trust Co.* v. *Stone,* (C. C. A.) 107 Fed. Rep. 305, 309, 310; *Nashville C. & St. T. Ry. Co.* v. *Taylor,* 86 Fed. Rep. 168, 178, 188; *Pa. Mut. Life Ins. Co.* v. *Austin,* 168 U. S. 685, 695; *Scott* v. *Donald,* 165 U. S. 58, 71; *Owensboro* v. *Owensboro Waterworks,* (C. C. A.) 115 Fed. Rep. 318, 320.

Where there is a single ingredient of Federal jurisdiction in the case, the relief may be given upon other grounds although the Federal question is decided adversely to the complainants. *Osborne* v. *U. S. Bank,* 9 Wheat. 738, 823; *Tennessee* v. *Davis,* 100 U. S. 257, 264; *Gold W. W. Co.* v. *Keyes,* 96 U. S. 199, 203.

This is not a special rule of practice established for the sole benefit of banks and railway companies chartered by Congress, but it extends to all classes of cases. *New Orleans Water Works* v. *Louisiana Sugar Co.,* 125 U. S. 18, 32, 33.

Equity abhors a multiplicity of suits. *Werlein* v. *New*

*Orleans*, 177 U. S. 399; *Bienville Water Supply Co.* v. *Mobile*, 186 U. S. 212, 216, 217; *Robinson* v. *Brown*, 166 N. Y. 159, 162; *United States* v. *Union Pacific Ry. Co.*, 160 U. S. 1, 51.

It seems clear consequently, that so much of the bill that seeks relief grounded upon fraud and mistake in execution of the Rapid Transit contract, the breach of the same by the contract or its invalidity because it creates a municipal indebtedness beyond the limitation of the state constitution is sufficient to compel a decree in the complainant's favor.

The statute is unconstitutional because of its failure to provide adequate compensation for the property taken. *Keene* v. *Bristol*, 26 Pa. St. 46; *Sage* v. *Brooklyn*, 89 N. Y. 189; *Bloodgood* v. *Mohawk & Hudson R. R. Co.*, 18 Wend. (N. Y.) 9, 17, 18; *Kennedy* v. *Indianapolis*, 103 U. S. 599, 603; *Connecticut River R. R. Co.* v. *Franklin Co. Comrs.*, 127 Massachusetts, 50, 52, 54, 55, 56; *Baltimore & Susquehanna R. R. Co.* v. *Nesbit*, 10 How. (U. S.) 395, 398, 399; *Boston & Lowell R. R. Co.* v. *Salem & Lowell R. R.*, 2 Gray (Mass.), 1, 37; *Haverhill Bridge Proprietors* v. *Essex Co. Comrs.*, 103 Massachusetts, 120, 124; *Brickett* v. *Haverhill Aqueduct Co.*, 142 Massachusetts, 394, 396.

The statute takes public funds for a private use and is not due process of law. A decision sustaining the act logically implies the power of the United States to build and operate all railroads that engage in interstate commerce. *Pleasant Township* v. *Ætna Life Ins. Co.*, 138 U. S. 67; *Rippe* v. *Becker*, 56 Minnesota, 101, 111; *People* v. *Salem*, 20 Michigan, 452, 478; *Re Municipal Fuel Plants*, 66 N. E. Rep. 24.

This is a Federal question. *Loan Association* v. *Topeka*, 20 Wall. 655.

The act takes property without due process of law by subjecting complainants to the payment of taxes for the expenses of officers neither elected by the people, nor appointed by representatives of the people, and gives to such officers control of the complainants' business and of the city's money. A majority of the quorum of the Rapid Transit Board have been elected by the remainder of those appointed by the legislature.

Such a close corporation is unconstitutional. *Fox* v. *M, & H. R. Humane Society,* 165 N. Y. 517, 525; *Rathbone* v. *Wirth,* 6 App. Div. 277, 285, 308; aff'd 150 N. Y. 459; *State* v. *Barker,* 89 N. W. Rep. 204, 208; *State* v. *Fox,* 63 N. E. Rep. 19.

The filing of the maps and profiles of their route gave to the complainants and their predecessors a vested and exclusive right thereto and the State then contracted not to interfere with the same. *Rochester H. & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.,* 110 N. Y. 128, 132; *S. C.,* 44 Hun, 206, 210; *Suburban R. T. Co.* v. *Mayor,* 128 N. Y. 510, 519; *United States* v. *O. & C. R. R. Co.,* 176 U. S. 28, 50.

The franchise is property which cannot be taken without compensation and the obligation of that contract cannot be impaired without a violation of the Constitution. *City Railway Co.* v. *Citizens' Street R. R. Co.,* 166 U. S. 557; *People* v. *O'Brien,* 111 N. Y. 1; *Chesapeake & O. Canal Co.* v. *Baltimore & O. R. R. Co.,* 4 G. & J. (Md.) 1.

The Constitution protects rights which are contingent as well as those that are vested in present possession and enjoyment. *Dunn* v. *Sargent,* 101 Massachusetts, 336; *Appeal of Benson,* 22 Pa. St. 164; *White* v. *White,* 5 Barb. 474; *S. C.,* 4 How. Pr. 102; *Holmes* v. *Holmes,* 4 Barb. 295; *Forster* v. *Scott,* 136 N. Y. 577, 585; *Danolds* v. *New York,* 89 N. Y. 37, 45; *Long Island Water Supply Co.* v. *Brooklyn,* 166 U. S. 685; *West River Bridge* v. *Dix,* 6 How. 507; *Richmond* v. *Railroad Co.,* 13 How. 71; *Troy & Boston R. R. Co.* v. *Northern Turnpike Co.,* 16 Barb. 100; *People* v. *O'Brien,* 111 N. Y. 1; *Huffimire* v. *Brooklyn,* 162 N. Y. 584; *Westervelt* v. *Gregg,* 12 N. Y. 202; *White* v. *White,* 5 Barb. 474; *United States* v. *Central Pac. R. R. Co.,* 118 U. S. 235, 238; *State* v. *Banker,* 4 Kansas, 324; *Jones* v. *Hobes,* 63 Tennessee, 113.

So far as these complainants are concerned the validity of the Tunnel Law has been directly adjudicated. *Matter of Union El. R. R. Co.,* 112 N. Y. 61, 70; *Barrow* v. *Hunton,* 99 U. S. 80; *People ex rel. Underground Ry.* v. *Newton,* 58 N. Y. Super. Ct. 439.

Since the Rapid Transit Underground Railroad Company was chartered less than five years before the bill was filed, it cannot be claimed that its charter has been forfeited. The defendants are estopped from claiming that the charters of the other corporations have been forfeited. *Coney Island &c. R. R. Co.* v. *Kennedy,* 15 App. Div. 588; *Devereaux* v. *Brownsville,* 29 Fed. Rep. 742.

Delay due to the inaction of the court is sufficiently excused. *Hunt* v. *Smith,* 3 Rich. Eq. (S. C.) 465, 511; *Pendlery* v. *Carleton,* 59 U. S. App. 288; *Bell* v. *Bell,* 181 U. S. 175, 179; *Matter of Kings County El. R. R. Co.,* 105 N. Y. 97.

No one but the Attorney General of the State can raise the question of the forfeiture of the charter. *Re N. Y. El. R. Co.,* 70 N. Y. 327, 338; *Santa Rosa City R. R. Co.* v. *Central St. Ry. Co.,* 38 Pac. Rep. 986; *Olyphant S. D. Co.* v. *Olyphant,* 196 Pa. St. 553; *Briggs* v. *Cape Cod Ship Canal Co.,* 137 Massachusetts, 71; *Am. Cable Ry. Co.* v. *New York,* 68 Fed. Rep. 227; 70 Fed. Rep. 853; *Southern Pac. R. Co.* v. *Orton,* 32 Fed. Rep. 457; *Bybee* v. *Oregon, etc., Ry. Co.,* 139 U. S. 663; *Dousenbury* v. *N. Y., W. & C. Tr. Co.,* 46 App. Div. 267; *Matter of N. Y. & L. I. Bridge Co.,* 148 N. Y. 540.

When the consent was granted by the court and municipal authorities, it inured by relation to the corporation which had the prior right to construct the street railroad. *Ingersoll* v. *Nassau El. R. Co.,* 157 N. Y. 453; *Geneva & W. Ry. Co.* v. *N. Y. C. & H. R. R. Co.,* 163 N. Y. 228, 235.

The act denies the complainants the equal protection of the laws. *Hincks* v. *Milwaukee,* 46 Wisconsin, 559; *Gordon* v. *Winchester B. & A. F. Assn.,* 12 Bush (Ky.), 110, 113; *Memphis* v. *Fisher,* 9 Baxter (Tenn.), 239; *Stearns* v. *Minnesota,* 179 U. S. 223, 262; *Gulf, C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150, 164; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Ryan* v. *New York,* N. Y. Law Journal, Feb. 11, 1904.

*Mr. Edward M. Shepard,* with whom *Mr. George W. Wickersham* and *Mr. De Lancey Nicoll* were on the brief for the

Rapid Transit Board, John B. McDonald, and others, respondents:

As to the jurisdictional question:

The court below was without jurisdiction. Before there can be any jurisdiction there must be a Federal question; and here there is no such question, for the matter in dispute did not arise under the Constitution or laws of the United States. *Defiance Water Co.* v. *Defiance*, 191 U. S. 184, and cases cited on p. 190; *Shreveport* v. *Cole*, 129 U. S. 36; *St. Paul &c. R. Co.* v. *St. Paul & N. P. R. Co.*, 68 Fed. Rep. 2; *McCain* v. *Des Moines*, 174 U. S. 168; *West. Un. Tel. Co.* v. *Ann Arbor R. R. Co.*, 178 U. S. 239; *New Orleans* v. *New Orleans W. W. Co.*, 142 U. S. 79, 88.

The court below in order to retain jurisdiction had to find in the allegations of the bill a real and substantive Federal question. Assuming the truth of the allegations of fact, some contract with the State, real or apparent, must be made out. *New Orleans* v. *New Orleans Water Co.*, 142 U. S. 79, 88.

In cases of this character where this court has sustained the jurisdiction, a contract has been established by sufficient allegations at the least. *Illinois Central R. R.* v. *Chicago*, 176 U. S. 646; *Citizens' Railway Co.* v. *Citizens' Railroad Co.*, 166 U. S. 557.

*Swafford* v. *Templeton*, 185 U. S. 487, and *Wiley* v. *Linkler*, 179 U. S. 58, merely distinguished cases where the subject-matter of the suit was Federal—as plainly the subject-matter of this suit is not—from cases which were like this suit, where a Federal question has been held to be presented in a controversy over subject-matter not Federal.

Mr. *George L. Rives* and Mr. *Theodore Connoly* submitted a brief on behalf of the city of New York and other respondents.

Mr. CHIEF JUSTICE FULLER delivered the opinion of the court.

This was a bill filed on behalf of the Underground Railroad of

the City of New York and the Rapid Transit Underground Railroad Company, corporations organized under the laws of New York, against the City of New York, the Mayor, the Comptroller, and the Rapid Transit Commissioners of New York, and contractors engaged in the construction of an underground railway and subway in that city, all of the State of New York, to enjoin payment for work done and further construction. The bill was demurred to for the reason, among others, that the Circuit Court was without jurisdiction in that the averments of the bill did not present a case arising under the Constitution or laws of the United States, which was the sole ground on which jurisdiction was invoked. The demurrer was sustained and the bill dismissed for want of jurisdiction, 116 Fed. Rep. 952, and, the question of jurisdiction being certified, the case was brought directly to this court.

If, on the face of complainants' statement of their own case, it does not appear that the suit really and substantially involved a dispute or controversy as to the effect or construction of the Constitution, on the determination of which the result depended, the Circuit Court was right and its decree must be affirmed. *Defiance Water Company* v. *Defiance,* 191 U. S. 184, and cases cited.

The bill refers to the rapid transit acts of 1891, Laws, 1891, c. 4, 1894, Laws, 1894, c. 752, and 1895, Laws, 1895, c. 519, and sets forth their provisions for a rapid transit board empowered to construct an underground railroad in the city of New York; for the submission to the electors of the city of the question whether there should be municipal construction of railroads; for the power of the board, in case a majority vote favored municipal construction, to grant the right to maintain and operate the municipal railroad for not less than thirty-five years nor more than fifty years; for the advance by the city of the funds to construct the railroad; for the borrowing of. money and the issuing of bonds therefor; for the laying out of the routes and the adoption of the plan of construction by the board; for the requisite consent of the local authorities,

consisting of the mayor and common council, and of a majority in value of the abutting owners, or, in lieu thereof, of the Supreme Court of the State; for the various steps of procedure after the popular vote in favor of municipal construction; and for details of the contract for the construction and operation of the municipal road.

The bill further alleges that the Rapid Transit. Board had determined on the construction of an underground railroad; that the local authorities have duly given their consent and that the Appellate Division of the Supreme Court has, on application of. the board, appointed three commissioners to determine whether the railroad ought to be constructed and operated; that said commissioners have duly determined that it ought to be; that their determination has been duly approved by the court, and has been taken in lieu of the consent of the property owners; that the city of New York, the municipal authorities and board have entered into a contract, February, 1900, with defendant contractors, to construct the road over the routes determined on, and that the railroad is now in process of construction, and large sums of money have been paid out by the city therefor.

But it is asserted that the complainants had a prior exclusive right under contract with the State to the use for underground railroad purposes of the streets now sought to be used for the municipal rapid transit road, and that the legislation is in conflict with the Fourteenth Amendment, and section 10 of article II of the Constitution.

No rights created by the Constitution are asserted, and if the facts set up by complainants are, as matter of law, wholly inadequate to show possession of contract rights as between them, or either of them, and the State, then no dispute or controversy arises in respect of an unconstitutional invasion of such rights.

The bill avers that the Underground Railroad of the city of New York, one of the complainants, was formed August 21, 1896, by the consolidation of the Central Tunnel Railway

Company, the New York and New Jersey Tunnel Railway Company and the Terminal Underground Railway Company, as to the two latter of which no claim is made and no question arises.

And it alleges that the Central Tunnel Company was organized March 26, 1881, "under the so-called General Railroad and Tunnel Law of the State of New York, namely, chapter one hundred and forty of the Laws of 1850, and of the various acts amendatory of and supplemental to the same, and chapter five hundred and eighty-two of the Laws of 1880."

That company's articles of association declared its purpose to be "constructing and maintaining and operating a railroad for public use in the conveyance of persons and property."

Chapter 140 of the Laws of New York of 1850, as amended by chapter 133 of the Laws of 1880, provided that railroad corporations formed under it should possess in addition to "the powers conferred on corporations in the third title of the eighteenth chapter of the first part of the Revised Statutes," (which did not include power to construct railroads or to use the streets of a city,) the power "to construct their road across, along, or upon any . . . street, highway, . . . which the route of its road shall intersect or touch. . . . Nothing in this act contained shall be construed . . . to authorize . . . . the construction of any railroad not already located in, upon or across any streets in any city, without the assent of the corporation of such city." Laws, 1850, pp. 211, 224; Laws, 1880, pp. 242, 244.

By chapter 10 of the Laws of 1860 it was provided: "It shall not be lawful hereafter to lay, construct or operate any railroad in, upon or along any or either of the streets or avenues of the city of New York, wherever such railroad may commence or end, except under the authority and subject to the regulations and restrictions which the legislature may hereafter grant and provide," (Laws, 1860, p. 16,) which was carried forward into the charter of the city of New York of 1882. Laws, 1882, c. 410, § 1943. This was held by the Court of Appeals to

render the general railroad act inapplicable to the city of New York. *Matter of Washington &c. Railroad Company*, 115 N. Y. 442.

The constitution of the State contained, by amendment adopted in 1874, the following provision:

"But no law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of that portion of the street or highway upon which it is proposed to construct or operate such railroad be first obtained, or in case the consent of such property owners cannot be obtained, the general term of the Supreme Court, in the district in which it is proposed to be constructed, may, upon application, appoint three commissioners, who shall determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination, confirmed by the court, may be taken in lieu of the consent of the property owners."

This was continued by the constitution of 1894, which changed the words "General Term" to "Appellate Division," and the word "district" to "department."

The Court of Appeals ruled in *People* v. *O'Brien*, 111 N. Y. 1, that in order for a railroad corporation to acquire authority to construct or operate a railroad upon the streets of any municipality, not only the consent of the municipal authorities was indispensable, but that they were empowered to grant such consent on such terms and conditions as they chose to impose.

The first section of chapter 582 of the Laws of 1880, provided:

"Whenever such road, or any part of the same, is intended to be built within the limits of any city or incorporated village of this State and to run by means of a tunnel underneath any of the streets, roads or public places thereof, the said company, before building the same underneath any of said streets, roads or public places, shall obtain the consent of the owners of one-

half in value of the property bounded on the line, and the consent of the board of trustees of the village by resolution adopted at a regular meeting and entered on the records of said board, and of the proper authorities having control of said streets, roads or public places; or in case such consent of the owners of property bounded on the line cannot be obtained, the general term of the Supreme Court in the district in which such city or village is situated may, upon application, appoint three commissioners who shall determine, after a hearing of all parties interested, whether such railroad ought to be allowed to be built underneath said street, roads and public places, or any of them, . . . and the determination by said commissioners, confirmed by the court, may be taken in lieu of the consent of said authorities and property owners." Laws, 1880, p. 872.

In *Matter of New York District Railway Company*, 107 N. Y. 42, decided in 1887, the Court of Appeals held that street underground roads were street railways and that the constitutional provision applied to them; that the act of 1850 had no application to street railroads, and, if it had, the authority to construct had been taken away by the act of 1860; and that the provision of the act of 1880, allowing the action of the Supreme Court commissioners to stand in the place of the consent of the municipal authorities was unconstitutional, and also as to the consent of the abutting owners, because indivisible; but that perhaps the act might stand as authority for the construction of an underground street railway on condition of the assent of the city authorities and the half of abutting values, rejecting all the provisions for the appointment of commissioners.

It follows that the Central Terminal Company could have acquired no right to build the proposed railroad without the consent of the municipal authorities and the consent of the abutting property owners, yet no such consents are asserted to have been given it, and the contrary appears on the face of the bill. But after setting forth the provisions for a rapid transit board by the Rapid Transit Act of 1891, as amended,

especially in 1894, and the proceedings thereunder, which showed that the consent of the municipal authorities and of the Supreme Court in lieu of the property owners had been given to the municipal construction sought to be enjoined, the bill argues that the determination and consents in favor of such municipal construction amounted to authority to construct the railroad of the Central Tunnel Company because it was an underground railroad, which it had been proposed should occupy the same route or part of it, notwithstanding the railroad of that company had not been consented to by either the local authorities or the abutting property owners of the Supreme Court acting for them.

We quite agree with the Circuit Court that this contention is wholly inadmissible. The determination of the Rapid Transit Board and the consents of the municipal authorities and the abutting owners to municipal construction could not be regarded as enuring to the benefit of private parties who had endeavored to acquire the franchise twenty years before and had failed to perform the conditions essential to the right to construct such a road.

The bill also avers that the consent of the abutting property owners could not be obtained by the Central Tunnel Company, and that the company applied to the General Term of the Supreme Court for the appointment of three commissioners, and that on February 2, 1883, commissioners were appointed, one of whom declined to serve, whereupon the court appointed another commissioner, who also declined to serve; that the company thereupon applied for another appointment, and "said application was duly granted by said court;" but that the said General Term and its successor, the Appellate Division, had not yet entered said order, and that, by reason of the inaction of the Supreme Court, the Central Tunnel Company and its successor, the Underground Railroad Company, had not been able to continue the proceedings before commissioners, and neither of said corporations had been able to commence the construction of its line of railroad. If this

imputation of laches could in any view be entertained it is enough to say that the General Term in 1886 adjudged the act of 1880, under which the application was made, to be unconstitutional in respect of obtaining consents, *Matter of New York District Railway Company*, 42 Hun, 621, and, as already mentioned, this decision was affirmed by the Court of Appeals. 107 N. Y. 42.

The general railroad law of 1850 provided for the filing of a map and profile of the proposed route, and this was done by the Central Tunnel Company, March 28, 1882, and the bill claims that thereby the company obtained a contract right. But the mere filing of a map and profile by a company incorporated under that law could not give an exclusive right to the occupancy of the space included in such map and profile as against the State. In some instances it might give priority as between railroad corporations, whose corporate existence had not lapsed for non-construction, but only until the legislature otherwise provided. And so it was held in *People v. Adirondack Railway Company*, 160 N. Y. 225, where, among other things, it was observed: "There is no property in a naked railroad route, existing on paper only, that the State is obliged to pay for when it needs the land covered by that route for a great public use, and its officers are authorized to act by appropriate legislation." The judgment was affirmed by this court in *Adirondack Railway Company v. New York State*, 176 U. S. 335, and we said:

"But the capacity to acquire land by condemnation for the construction of a railroad attends the franchise to be a railroad corporation, and when unexecuted cannot be held to be in itself a vested right surviving the existence of the franchise or an authorized circumscription of its scope. . . .

"We agree with the Court of Appeals, as has already been indicated, that the railroad company occupies no position entitling it to raise the question. The steps it had taken had not culminated in the acquisition of any property or vested right."

Where certain routes have been determined according to law, and the necessary consents have been obtained, and real estate has been acquired by condemnation, the situation would be entirely different. *Suburban Rapid Transit Company* v. *Mayor*, 128 N. Y. 510. But without the consents the right to construct and operate could not become vested. *In Matter of Application of the Rochester Electric Railway Company*, 123 N. Y. 351.

The Underground Railroad, one of the complainants, was, as before stated, formed by the consolidation of the Central Tunnel Company with two other companies under chapter 676 of the Laws of 1892, which provided for the consent of the proper city authorities and of the owners of one-half in value of the abutting property, or, as to the latter, the determination of commissioners affirmed by the Supreme Court. Neither of these consents is alleged to have been obtained.

It is averred, however, that the company paid, when its articles of consolidation and incorporation were filed in August, 1896, the incorporation tax of one-eighth of one per cent on its capital stock, required to be paid by chapter 908 of the Laws of 1896; but the payment of a tax for the privilege of being a corporation did not carry with it the right to occupy any street of New York with its proposed railroad.

And the fact, also asserted, that this company filed a map or profile did not, as we have seen, in itself create a contract right.

The company is alleged to have leased its road to the Rapid Transit Underground Railroad Company, the other complainant, which was incorporated in 1897, subject to the rapid transit law of the State and the railroad law under which it was incorporated. The consent of the municipal authorities and the consent of the abutting property owners, or the substituted consent of the Supreme Court, were essential to the right to construct a railroad, and these it never obtained. It paid the incorporation tax under the tax law of 1896, but that gave no right of construction, nor did its filing of a map or

profile. There is also an averment that this company "paid taxes duly assessed against it by the city, county and State of New York," but none that any tax was paid on the right to construct a railroad in the streets of New York.

The result is that it appeared on the record that complainants possessed no contract rights, which were impaired, or of which they were deprived, and that the suit did not really and substantially involve a dispute or controversy as to the application or construction of the Constitution.

We, therefore, do not deem it necessary to further unfold the convolutions of this lengthy bill. Many matters attacking the validity of the Rapid Transit acts, and the proceedings in municipal construction thereunder, were put forward, but we are not called on to consider them in view of the conclusion that the Circuit Court did not acquire jurisdiction.

*Decree affirmed.*