---

(62 App. Div. 428.)

### In re FULLER'S ESTATE.

(Supreme Court, Appellate Division, Second Department. June 20, 1901.)

1. INHERITANCE TAX—APPRAISAL OF ESTATE—CONSTITUTIONAL LAW—DUE PRO-
CESS OF LAW.
    Laws 1901, c. 173, § 5, provides that the surrogate, on his own motion,
or on the application of an interested party, shall direct the county
treasurer to fix the fair market value of property of persons whose
estates shall be subject to the payment of a transfer or inheritance tax.
Section 8 declares that the report of the appraiser shall be made in
duplicate, one of which shall be filed in the office of the surrogate and
one in the office of the state comptroller, and from such report and
other proof relating to the estate the surrogate shall determine the
cash value of the estate and the amount of tax for which it is liable;
or the surrogate may so determine such cash values and amount of the
taxes without appointing an appraiser. Section 12 allows the county
treasurer to retain a certain per cent. of the taxes collected by him as
fees. Held, that the provision directing the appointment of the county
treasurer as appraiser was not unconstitutional, as taking property
without due process of law, and hence the denial of an order for the
appointment of such person on the ground that he was an interested
party was error.

**2. SAME—SEPARABLE STATUTE.**
Such statute is not unconstitutional, even though the county treasurer be disqualified, as section 8 authorizes the surrogate to determine the cash values of estates, and the amount of taxes for which they are liable, without the aid of an appraiser; the provision relating to the appointment of the county treasurer being entirely separable from the residue.

Appeal from order of surrogate, Westchester county.

Petition by Florence Fuller Saunders for the appraisal for inheritance taxation of the estate of Sarah Rockwood Fuller, deceased, and for the appointment of a transfer tax appraiser. From an order declining to appoint the county treasurer (70 N. Y. Supp. 1050), all the parties appeal. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Charles H. Young, for appellant petitioner.
Frank M. Buck, for other appellants.

WOODWARD, J. This proceeding was instituted by the presentation to the surrogate of a petition by Florence Fuller Saunders, an interested party, praying for the appointment of some competent person as transfer tax appraiser as provided by law. The surrogate, instead of appointing Francis M. Carpenter, the county treasurer, such appraiser, as provided by law, appointed John F. Lambden, reviving the provisions of the law in force prior to April 1, 1901, in that particular. This was not the result of mistake or inadvertence, but appears to have followed from a deliberate conviction on the part of the learned surrogate that chapter 173 of the Laws of 1901 is unconstitutional and void, and that the law in existence prior to April 1st is still in effect. The surrogate holds this in an elaborate opinion, the theory being that the county treasurer, whose commissions or fees are based upon the valuation of the estate, is an interested party, and that it is taking property without due process of law for him to make the appraisal, when his own compensation depends upon the valuations which are fixed. Without invoking the rule that actual and material injury must exist to warrant a court in declaring a statute unconstitutional (People v. Canal Board of New York, 55 N. Y. 390), or the further rule that a court should not pass upon the constitutionality of a statute unless necessary to a decision in a cause (People v. Crissey, 91 N. Y. 616; People v. Brooklyn, F. & C. I. Ry. Co., 89 N. Y. 75), nor unless required by the most cogent reasons, or compelled by unanswerable grounds (People v. Budd, 117 N. Y. 1, 13, 22 N. E. 670, 682, 5 L. R. A. 559), let us examine the scheme of the law, that we may determine this question fairly upon the merits. The transfer or inheritance tax is not a tax upon property, but upon the right of succession. In re Davis' Estate, 149 N. Y. 539, 546, 44 N. E. 185. It is the tribute which the state exacts for permitting persons to inherit within the jurisdiction of New York. The amount of the tax, it is true, depends upon the value of the property to be transferred; but the theory of the law is that the tax is exacted for the privilege of

receiving the property, the state having the absolute right to say under what conditions it will permit succession. The property does not belong to the dead; their rights of property are at an end. Those who succeed to the property become secure in their title only when they have paid the tribute demanded by the state as a condition of such succession, and it is difficult to understand, therefore, how any rights of property are involved in the matter now before us. The state demands from those who are to receive property by succession a certain tribute, based upon the value of the property; and as a part of the machinery for carrying out this purpose it has provided, under certain circumstances (and which exist in the matter now before us), that the "surrogate, either upon his own motion, or upon the application of any interested party, shall by order direct the county treasurer    *    *    *    to fix the fair market value of property of persons whose estates shall be subject to the payment of any tax imposed by this article." Chapter 173, § 5, Laws 1901. This act was subsequently amended by chapter 493 of the Laws of 1901, but we are of opinion that this latter act does not in any manner affect the present question. By the provisions of section 8 of the same chapter, it is provided that "the report of the appraiser shall be made in duplicate, one of which duplicates shall be filed in the office of the surrogate and the other in the office of the state comptroller. From such report and other proof relating to any such estate before the surrogate, the surrogate shall forthwith, as of course, determine the cash value of all estates and the amount of tax to which the same are liable; or the surrogate may so determine the cash value of all such estates and the amount of tax to which the same are liable, without appointing an appraiser." Section 12 of the same act provides that the county treasurer shall "be allowed to retain on all taxes paid and accounted for by him each year under this article, five per centum on the first fifty thousand dollars," etc., and it is upon the basis of this personal interest on the part of the county treasurer in the fees that the learned surrogate has builded up the theory that there is a lack of due process of law in allowing the county treasurer to fix the market value of the estate which is to be transferred. This seems to us like refining a theory to the point of impracticability, and to entirely ignore the fact that a constitution is an instrument of government, made and adopted by the people for practicable purposes connected with the common business and wants of human life. People v. New York Cent. R. Co., 24 N. Y. 485. It is to be noticed that the county treasurer does not determine the cash value of the estate, which is the basis on which the tax is levied. He is to fix the "fair market value," and it is made his duty to "make report thereof and of such value in writing, to the said surrogate, together with the depositions of the witnesses examined, and such other facts in relation thereto and to said matter as the surrogate may order or require" (section 7), and the surrogate, "from such report and other proof relating to any such estate," is to "determine the cash value of all estates, and the amount of tax to which the same are liable." The whole theory and effect of the law is to make the county treas-

urer a commissioner of the surrogate's court to look into the facts in relation to an estate, and to report the same in writing, together with the evidence on which his conclusion is based; and with these aids, and "other proof relating to any such estate," the surrogate is to reach a final determination of the cash value of the property and the amount of the tax. The county treasurer is to receive, not from the estate, but from the tax levied, collected, and accounted for, a certain percentage, and it does not necessarily follow that the individual county treasurer who makes the appraisal will receive these fees, for it may be that such appraisal will be near the end of his term, while the tax may be paid to and accounted for by his successor, which is the condition precedent to the receiving of any fees. If it be said that the county treasurer is interested in making the estate as large as possible, it may be said that this interest is in harmony with that of the state; and the ample power vested in the surrogate to determine the cash value, independently of an appraiser, and the provision that the surrogate is to be permitted to have "other proof relating to any such estate" in reaching his determination, is a sufficient guaranty that individuals will not be called upon to bear a greater burden than the law intended. It has never been suggested, so far as we are able to discover, that it was contrary to law or public policy that a public officer should have interests in harmony with those of the state, and the fact that the final determination of the value on which the tax is based is in the hands of the surrogate is a conclusive answer to the suggestion that there is any lack of due process of law in the manner of carrying the statute into effect. Its meaning, in so far as it relates to the constitutional question, is not changed in the slightest degree by the use of the words "as of course," in section 8. The only fair understanding of these words, in their relation to section 8 of chapter 173 of the Laws of 1901, is that the surrogate is to proceed without the intervention of any one when he has such report before him, and they relate to the practice, rather than to the law.

As we have already suggested, the inheritance tax being a tax upon the privilege of succession, rather than upon the property, there can be no taking of property without due process of law on the part of the county treasurer. He takes nothing whatever from the successor. The state takes from the successor a certain amount, and then the state allows to the county treasurer, as fees, a percentage upon the amount of "taxes paid and accounted for by him each year"; and the interest of the latter is too remote to be made the foundation for declaring a statute unconstitutional, even if his determination of the market value was more conclusive than it appears to be under the law. Every presumption is in favor of the constitutionality of a statute (Fort v. Cummings, 90 Hun, 481, 36 N. Y. Supp. 36), and, when a statute and the constitution can be so construed as to enable both to stand, it is the duty of the court to give them that construction (Sweet v. City of Syracuse, 129 N. Y. 316, 27 N. E. 1081, 29 N. E. 289). Even were it conceded that it was improper for the county treasurer to act as appraiser, the provision of the statute authorizing the surrogate to determine

the cash value of estates without the aid of an appraiser makes it possible to administer the law in a constitutional manner, and the case would thus be brought within the general rule that, where a part of a statute is unconstitutional, and that part is entirely separable from the residue, so that the other portion of it may be enforced without any reference to the former, the part in conflict with the fundamental law will be alone condemned. Wynehamer v. People, 13 N. Y. 378, 441. In every light in which chapter 173 of the Laws of 1901 may be viewed, in so far as the question now before us is concerned, it may be administered within the sanction of the constitution; and it follows, as a necessary consequence, that it supersedes all former laws upon the point here involved. No legislative powers have been confided to the surrogates of this state by the constitution, and we are of opinion that the order which undertakes to revive a law in existence before the 1st day of April cannot be sustained. The order appealed from should be reversed, and set aside.

Order of surrogate's court of Westchester county reversed, with $10 costs and disbursements. All concur.