PEOPLE ex rel. NEW YORK, N. H. & H. R. CO. v. BOARD OF R. COM'RS OF STATE OF NEW YORK et al.

(Supreme Court, Appellate Division, Third Department. March 11, 1903.)

1. RAILROADS—NEW YORK CITY—STATUTES—CONSTRUCTION.
    Laws 1860, p. 16, c. 10, provided that it should not be lawful to construct any railroad along the streets of New York City, except under the authority and subject to restrictions thereafter granted and provided by the Legislature. Since that time three acts (Laws 1875, p. 740, c. 606; Laws 1880, p. 874, c. 583; and Laws 1884, p. 872, c. 252) have been passed, under which street railroads could be built in the city. In 1890 most of the provisions of the railroad act of 1850 (Laws 1850, p. 211, c. 140), and the three acts above referred to, were merged in one act (Laws 1890, p. 1082, c. 565); those three acts being expressly repealed. The act of 1890 extended the general provisions of the railroad law of 1850 to New York City, imposing special provisions for the protection of the city when a railroad invaded its streets. *Held*, that the act of 1890 was not merely a codification of the pre-existing laws, but gave authority for the construction of railroads in New York City without reference to the provision of the act of 1860.

2. SAME—RAPID TRANSIT ACT—APPLICATION.
    Rapid Transit Act 1891 (Laws 1891, p. 3, c. 4) applies only to roads to be built exclusively within New York City, and is not intended to exclude

the application of Railroad Law 1890 (Laws 1890, p. 1082, c. 565) to the city.

3. SAME—PAYMENT FOR STOCK—CASH.

Payment for stock in a railroad company by an uncertified check on bank is not a payment in cash, such as is specified by Laws 1890, p. 1082, c. 565, § 2, requiring 10 per cent. of the minimum amount of capital stock of a proposed railroad company to be paid in cash at the time of the filing of the certificate of incorporation.

4. SAME—CERTIFICATE OF INCORPORATION—SUBSEQUENT CERTIFICATE—VALIDITY.

Where a certificate of incorporation of a railroad company is void because 10 per cent. of the capital stock has not been paid in cash at the time of filing such certificate, as required by Laws 1890, p. 1082, c. 565, § 2, the filing of an additional certificate after payment has been made, containing all that the statute requires an original certificate to contain, will operate as a valid original certificate, though it be called an "amended certificate" by the applicants for incorporation.

5. SAME—BOARD OF RAILROAD COMMISSIONERS—REVIEW OF DISCRETION.

Under Laws 1892, p. 1395, c. 676, § 59, requiring the Board of Railroad Commissioners to certify that public convenience and necessity require the construction of a proposed railroad, the action of the board in so determining is not a subject for judicial revision.

Certiorari by the people, on the relation of the New York, New Haven & Hartford Railroad Company, against the Board of Railroad Commissioners of the State of New York and the New York & Port Chester Railroad Company, to review the decision of the Board of Railroad Commissioners in granting to the New York & Port Chester Railroad Company a certificate under section 59 of the railroad law (Laws 1890, c. 565, amended by Laws 1892, p. 1395, c. 676). Affirmed.

See 78 N. Y. Supp. 750.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and LYON, JJ.

Henry W. Taft (Edward H. Warren, of counsel), for relator.

William C. Trull (Judson S. Landon and Frank Sullivan Smith, of counsel), for respondent.

PARKER, P. J. The New York & Port Chester Railroad Company on the 12th of September, 1901, presented a petition to the Board of Railroad Commissioners for a certificate, under section 59 of the railroad law (Laws 1890, c. 565, amended by Laws 1892, p. 1395, c. 676), that public convenience and necessity required the construction of the railroad proposed in its articles of association, and that all the requirements of such section had been complied with. The relator above named opposed this application, claiming that the proposed road paralleled its own road, as well as others, and that it was not a public necessity. It also urged before the board certain irregularities and matters of law why such certificate should not be granted. An extended hearing was had, and much evidence taken before the board, and on or about April 8, 1902, the certificate applied for was granted. The matter now comes up for review before this court, upon a certiorari issued on the petition of said relator. The objections will be

¶ 3. See Corporations, vol. 12, Cent. Dig. § 347.

examined in the order in which they were presented upon the argument of this appeal.

The relator claims that since chapter 10, p. 16, of the Laws of 1860, was enacted, there has been no law under which a railroad such as the applicant seeks to construct could be organized for operation in New York City. That act provides as follows:

"It shall not be lawful hereafter to lay, construct or operate any railroad in, upon or along any or either of the streets or avenues of the city of New York, wherever such railroad may commence or end, except under the authority and subject to the regulations and restrictions which the Legislature may hereafter grant and provide."

After such enactment it became the accepted conclusion that no railroad could be constructed in New York City except pursuant to legislation had subsequent thereto. From that date, up to the enactment of chapter 565 of the Laws of 1890, which is the railroad law now in force, three general acts were passed, under which railroads could be built in such city; and each one of them, so far as it was applicable to the city, had reference to a road the purpose of which was to utilize the streets or public places of the city as and for its right of way. During that time no railroad organized under the general act of 1850 (Laws 1850, p. 211, c. 140) could be built in the city, and therefore the situation was practically this: that only street railroads could be built in such city.

In 1890 most of the provisions of the general act of 1850, and the three several acts above referred to, viz., chapter 606, p. 740, of the Laws of 1875, chapter 583, p. 874, of the Laws of 1880, and chapter 252, p. 872, of the Laws of 1884, were merged into one act. In such act, one method of organizing a railroad company is provided, viz., the general provisions contained in article 1. In instances where the purpose is to construct a road that shall utilize the streets of a city as its right of way, special provisions and limitations are provided in separate articles devoted to that subject, and the three acts above referred to are repealed. To illustrate: Prior to 1890 the act of 1884 permitted the organization of a street surface railroad company in New York City, and contained regulations for its operation and management. In 1890 that act having been repealed, there would be no act under which such a railroad could be built in New York City, were it not that the act of 1890 took its place; and it took its place, not by incorporating within itself all of the provisions of the act of 1884 which provided for the organization of a company for that express purpose, but by providing a general method of organization for all railroad companies, applicable alike to cities and other localities, and in article 4 of such act imposing upon a company formed to operate a street surface railroad in a city such regulations and restrictions before its construction as were formerly required by the act of 1884. The scheme existing before 1890 seems to have been changed, and, instead of excluding New York City from the application of the general railroad law, articles and provisions have been inserted into that general law securing to the city protection which seemed to be lacking in the general law of 1850.

The claim of the relator, therefore, that this general act of 1890 is not a new enactment, but a mere codification of prior laws, is not quite accurate.   The general provisions for organization contained in article 1 are not a mere continuation of the provisions of the act of 1850. Necessarily, they are part of a new scheme, whereby the organization of a railroad designed to operate in New York City may be had, and hence under them may be done what could not have been done under the act of 1850.   Therefore the general provisions of the act of 1890, under which the applicant herein is concededly organized, are broader in their operation than was the act of 1850, and it is not as if such applicant had been organized under the act of 1850.

The act of 1890 is, in effect, a new scheme and a new enactment, the general provisions of which concerning the organization of railroad companies are applicable to New York City.   .

It is not surprising that, when the railroad laws were codified, such a change should have been made by the Legislature.   The language of the act of 1860 is directed against a railroad "in, upon or along any or either of the streets or avenues of the city," and it is as to such roads that "authority" for and "regulations and restrictions" are to be thereafter "granted and provided" by the legislature.

Although the courts held that such language applied to a road that merely crossed a street in New York City, as well as to those that sought to utilize a street as a right of way (People's Rapid Transit Co. v. Dash, 125 N. Y. 93, 26 N. E. 25, 10 L. R. A. 728), yet it was not altogether clear that such was the legislative intent.   It was vigorously urged that the intent of that act was not to exclude the city entirely from the operation of the general railroad act of 1850, but to prevent merely the building of a street surface road in the city under the provisions of such general act.   In 1890 the Legislature seem to have adopted this view.   They, by the act then passed, provide, by its general provisions, for the organizing of companies to operate in the city, and supply by special provisions in the same act that protection, when the road is to invade the streets, that was lacking in the act of 1850.

It is further claimed that, because the applicant has not complied and cannot comply with the provisions of the rapid transit act of 1891 (Laws 1891, p. 3, c. 4), it is not entitled to the certificate for which it asks.   I am of the opinion that such act was not intended to prevent all future railroads terminating at New York City from entering into and having their stations within its limits unless they comply with its provisions.   It is intended to apply only to those roads that are to be built exclusively for the city, and within its limits, and is not intended to exclude the application of the railroad law of 1890 therefrom.   I conclude, therefore, that the act of 1890 furnishes authority for the organization of a company to operate a railroad in New York City, such as the applicant herein designs to operate.

It is further urged that because $25,000 (being 10 per cent. of the minimum amount of the capital stock of the company) had not been paid in cash at the time the certificate of incorporation was filed, such filing was void under the provisions of section 2 of the general railroad law (Laws 1890, p. 1082, c. 565), and hence that the applicant has no lawful organization.   Such certificate was filed on April 3, 1901, and

it is clear from the evidence taken before the commissioners that at that time none of the stock subscribed for had been paid for in cash. The names of every subscriber for stock, and the amount taken by each, are set forth in the certificate filed, from which it appears that the requisite 10 per cent. had been subscribed for; and there is an affidavit annexed to the certificate, made by three of the directors, that it had all been paid for in cash. But as a matter of fact, not one of such subscribers had paid anything. One Gotshall, who was neither a director nor a subscriber for stock, had on the 2d day of April drawn his check on the Garfield National Bank against his own individual account for the sum of $25,000, payable to his own order, and by him indorsed as follows: "For deposit to the credit of the account of the New York & Port Chester Railroad Company, or C. O. Mailloux." Such check he delivered to Mailloux, who was a director of the company; and undoubtedly he had sufficient funds in bank to meet it, and also intended it as the payment to the company required by such section 2. Mailloux held such check until April 11th, when it was presented to the Garfield National Bank, and upon being cashed the amount was passed to the credit of the railroad company in such bank. Such check was not certified, and very clearly no arrangement had been made with the bank, or in any manner, by force of which the fund against which it was drawn was appropriated solely to its payment. At any time before its presentment, the fund in bank was subject to Gotshall's order, and absolute and final control of it had not been given to the company. Hence, within the decisions, I am of the opinion that such check cannot be deemed a payment in cash. Matter of Kings, Queens & Suffolk Railroad Co., 6 App. Div. 241, 39 N. Y. Supp. 1004; Durant v. Abendroth, 69 N. Y. 148, 25 Am. Rep. 158. The distinction as to when a check may, and when it may not, be deemed cash, is made apparent by the following language used in White v. Eiseman, 134 N. Y. 101, 107, 31 N. E. 276, 278, to wit:

"We think that when the money is actually in the bank to the credit of the special partner, and he gives absolute and final control of it to the general partner, it should be regarded as payment in cash. The delivery of a certified check to the payee has this effect."

But there is a further fact appearing in the case, which, it is claimed, sustains the organization of the applicant. On the 20th of August following, an amended certificate of organization was filed with the Secretary of State. It commences with a preamble stating that it is filed for the purpose of correcting informalities existing in the original certificate of April 3d, and that it is made under the provisions of section 7 of the general corporation law (Laws 1892, p. 1803, c. 687). It then proceeds, and, in form, contains all that an original certificate is required to contain; changes, however, being made from the original certificate as to the kind of road to be built, the termini, etc., and certain portions thereof being entirely omitted. It is signed by the same corporators; the names of the subscribers to stock and the amount taken by each are the same, and the same three, as directors, make an affidavit as to the amount subscribed and paid for in cash, in precisely the same words as were annexed to the original certificate. Such last affidavit, however, is sworn to on August 17, 1901. This

application was made to the Board of Railroad Commissioners after this amended certificate was so filed; and the applicant now claims that, if it failed in perfecting a legal organization by the filing of the original certificate of April 3d, the one filed on August 20th may be considered as an original one, and that clearly the $25,000 had been subscribed and paid in cash prior to that date.

Of course, a void certificate could not be cured by amendment, such as was attempted by the applicant; but, if we assume, as we must, that the certificate filed on April 3d was in fact void and of no effect, then all proceedings prior to August 20th were in fact preliminary to the organization of the company. Until that date, the situation was as if no certificate had been filed; and I see no reason why, if prior thereto all proceedings required by the statute had actually been taken, and the certificate then filed contained all that the statute required it to contain, it may not be deemed an original certificate, and operative to effect the organization of the company, even though it was then called an "amended certificate" by those who filed it. Plainly, its purpose was to complete the organization of the New York & Port Chester Railroad Company, and it was not, as a matter of fact, an amended certificate, because there was, as yet, no certificate to amend. Undoubtedly on April 11th $25,000 in cash was paid to the directors named in the certificate, as payment for the stock stated therein to have been subscribed for. It was then paid by the bank, upon presentment of Gotshall's check. It was properly paid to such directors, because the statute so requires. And thus the affidavit annexed to the certificate of August 20th, and which was verified on the 17th, was in all things correct and true. In my opinion, such payment was sufficient, and the organization of the company was not defective in this respect.

As to the other objection, taken upon the argument, that public necessity and convenience do not in fact require the construction of the road, it is so peculiarly a question of fact, and depends upon such a variety of considerations, that the determination of the board should not be interfered with by this court. It is the settled practice of this court to give great weight to the conclusion of the board upon such question; and this is peculiarly a case where their experience, technical knowledge, and means of ascertainment should control. Matter of Amsterdam J. & G. R. Co., 86 Hun, 578, 33 N. Y. Supp. 1009; People ex rel. Terminal Railway v. Railroad Com'rs, 53 App. Div. 61, 65 N. Y. Supp. 597.

I conclude that the determination of the Board of Railroad Commissioners should be affirmed, with costs. All concur.