N. Y. 649, 650. The direction was the proper procedure under the circumstances. Niagara Fire Ins. Co. v. Campbell Stores, 101 App. Div. 400, 92 N. Y. Supp. 208; Harris v. Buchanan, 100 App. Div. 403, 91 N. Y. Supp. 484. The record is clear that the court did not dismiss the complaint at all. The judgment may be modified accordingly. Section 1317, Code Civ. Proc.

I think that the judgment and order should be affirmed, with costs.

---

CRECELIUS v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   July 24, 1906.)

Appeal from Special Term, Queens County.

Action by Robert Crecelius against the city of New York. From a judgment for defendant, and an order denying a new trial, defendant appeals. Modified and affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, and RICH, JJ.

PER CURIAM. Judgment modified, so as to render it one of nonsuit, instead of upon the merits, and, as modified, judgment and order affirmed, without costs. See opinion in Annie Crecelius v. City of New York (Sup. decided herewith) 100 N. Y. Supp. 314. All concur, except JENKS, J., who dissents.

---

(50 Misc. Rep. 13.)

NEW YORK & L. I. R. CO. v. O'BRIEN.

(Supreme Court, Special Term, New York County.   March, 1906.)

1. RAILROADS—LOCATION—CONSENT—REVOCATION—PLEADING—INJUNCTION.

Under Laws 1860, p. 16, c. 10, it was unlawful to construct or operate any railroad on any streets in the city of New York, except under future legislative authority. Laws 1880, p. 872, c. 582, removed these restrictions where certain consents were obtained. A railroad company, organized in 1887, under Laws 1850, p. 211, c. 140, to construct an underground railroad in New York and Long Island City, and relying on the act of 1880, obtained the consents required thereby. Such act, after the consents were obtained, was repealed, but similar provisions were incorporated in the railroad law of 1890; but such provisions were limited to corporations thereafter incorporated. By Laws 1892, p. 1450, c. 702, such provisions were made retroactive. The authorities of Long Island City in 1891 agreed to a construction of plaintiff's road on a different plan from the one mentioned in its articles of incorporation, and the company acquired a right from the state to cross the East river. In 1891 the railroad began work, which it thereafter suspended for 13 years; but in 1895 it obtained permission to erect structures in the East river, and on property purchased in Long Island City, and on its property in Forty-Second street in New York City. The time for the completion of the work had been extended to January, 1907. Plaintiff sued to stay the revocation of permits theretofore issued, and defendant contended that the construction was unauthorized, because of the invalidity of plaintiff's franchises and for its failure to comply with the conditions on which they were granted. *Held*, that Laws 1880, p. 872, c. 582, being unconstitutional, so far as it authorized a railroad incorporated under Laws 1850, p. 211, c. 140, to

build its railroad and tunnel under the streets of a city with the consent of the abutting owners and the local authorities, the objection that plaintiff's articles of incorporation failed to rely on the tunnel act is unimportant, where the articles mentioned such act "and the acts amendatory thereto and supplementary thereof."

2. SAME—FRANCHISE—VALIDITY.

The consent of local authorities being obtained by plaintiff to the building of a railroad and a tunnel under the streets of New York, having been confirmed by amendment of Laws 1892, p. 1450, c. 702, to section 16, c. 565, p. 1089, of the railroad law of 1890, the contention that plaintiff's franchise was invalid because the requirements of Laws 1886, p. 919, c. 642, providing that such franchises be sold at public auction, had not been satisfied, was untenable; that act having been repealed by Railroad Law, Laws 1890, p. 1082, c. 565.

3. INJUNCTION—PRELIMINARY INJUNCTION—SCOPE OF INQUIRY—VALIDITY OF CONSENTS TO LOCATION OF RAILROAD.

In a suit for an injunction to restrain defendants from interfering with plaintiff or its contractors in the construction of its tunnel, objections to the validity of the consents obtained by plaintiff from the local authorities of New York and Long Island City, on the ground that plaintiff had not complied with the necessary formalities to locate the routes described in the consents, and that no consent could be given to a route different from that specified in the articles of association, would not be passed upon by the court on meager affidavits that said consents were so inconsistent with plaintiff's articles of association as to be invalid.

4. RAILROADS—LOCATION—CONSENT OF PROPERTY OWNERS.

Where, prior to constructing its tunnels in any street, road, or public place, plaintiff railroad company procured, as required by the statute then in force, consent of property owners of one-half in value of the property bounded on the line of such street or road, a contention that it should obtain the consent of the property owners along every street in its route before constructing in any street is without weight.

5. INJUNCTION — PRELIMINARY INJUNCTION — DETERMINATION — RESTRAINING ORDER UNTIL TRIAL.

The validity of a railroad company's franchise, in which a large amount of capital is invested and great public interests are involved, will not be determined on affidavits, and where a judgment against the corporation would prevent the completion of its construction within the time set therefor, on which completion its franchise is conditioned, and defendant would not be prejudiced by a postponement, the court will refuse to determine this question in advance of the trial, but will make a restraining order permitting the continuance of the work under the alleged franchise until the case may be tried in the court in the regular course.

Action by the New York & Long Island Railroad Company against one O'Brien. Motion to continue an injunction pendente lite. Granted.

Strong & Cadwalader, for plaintiff.

John J. Delany, Corp. Counsel, for defendant.

BLANCHARD, J. This is a motion to continue pendente lite a preliminary injunction restraining the defendants from interfering with the plaintiff or its contractors in the construction of the plaintiff's tunnel. The plaintiff was incorporated July 30, 1887, under chapter 140, p. 211, Laws of 1850 (railroad act). The route and terminals of the railroad were stated in the certificate of incorporation as follows:

"Commencing in Long Island City, Queens county, N. Y., at a point on or near the line of Borden avenue, and distant about one mile from the East river; thence partly under ground and partly in cut to the East river; thence under the East river by means of a tunnel and under streets and lands in

the city of New York, county of New York, to a connection with the New York Central & Hudson River Railroad at the corner or at a point near the Ninth avenue and Thirtieth street, with a branch on the north to a connection with the New York Central & Hudson River Railroad at or near the Grand Central Depot, in the city of New York, with a branch southerly to connect with what is known as the 'Hudson River Tunnel' in the vicinity of Washington Square, in said city of New York."

By chapter 10, p. 16, Laws of 1860, it was made unlawful—

"To lay, construct, or operate any railroad in, upon or under any or either of the streets or avenues of the city of New York, * * * except under the authority and subject to the regulations and restrictions which the Legislature may hereafter grant and provide."

The plaintiff, relying upon chapter 582, p. 872, Laws of 1880 (the so-called tunnel act), applied to the authorities of New York City and Long Island City for permission to construct this road. On December 23, 1890, the board of aldermen of New York City passed an ordinance, which was approved by the mayor, whereby the city assented—

"To the construction of a double-track railroad by the New York & Long Island Railroad Company in, by, and through a tunnel beneath the surface of Forty-Second street, from its easterly end to a point therein between Tenth and Eleventh avenues, in said city."

On October 27, 1891, the board of aldermen of Long Island City passed an ordinance, which was approved by the mayor, whereby the city assented to the construction of the plaintiff's road along the route described as follows:

"Beginning at a point under the ground, at or near the westerly end of Fifth street and in the middle line thereof at a low water mark on the east side of the East River in said city; thence running easterly, beneath streets and private property to a point at or near the intersection of Fourth street and West avenue; thence along Fourth street to or near Van Alst avenue, with a station hereafter to be located between the easterly shore of the East River and Van Alst avenue; thence northeasterly by a curved line to Meadow street."

The ordinance further provided:

"The said railroad shall be constructed along route 1 [which embraced that portion of the route above quoted] from the point or place of beginning in, by and through a tunnel or tunnels to a point in said Meadow street between Pearson and Davis streets, or thereabouts."

On January 5, 1891, a patent was granted by the state of New York, acting through the commissioners of the land office, granting to plaintiff a right of way within which to construct a tunnel for its road beneath the East river, from the easterly end of Forty-Second street, in New York City, to the westerly end of Fifth street, in Long Island City. Between June, 1892, and July 30, 1892, the plaintiff began constructing its road, and expended thereon more than 10 per cent. of its capital stock. Its building operations were then suspended for nearly 13 years. In 1905 the plaintiff, with the knowledge of the corporation counsel, procured from the proper authorities permission to erect structures and sink shafts and tunnels in the East river and in property which it had purchased in Fourth street, Long Island City. The plaintiff also sunk a shaft in its property abutting on Forty-Second street, New York City. In thus resuming operations the plaintiff relied upon chapter 775, p.

1903, Laws of 1867, and chapter 700, p. 468, Laws of 1895, as amended by chapter 647, p. 1430, Laws of 1899, chapter 617, p. 1482, Laws of 1901, chapter 487, p. 1142, Laws of 1902, and chapter 597, p. 1282, Laws of 1903, as extending till January 1, 1907, the time within which to complete its road.   In August, 1905, the plaintiff procured from the fire commissioner licenses to use and keep explosives at the four shafts where it was prosecuting its work; and in October and November, 1905, it obtained permits from the building department to erect temporary structures.   The plaintiff has vigorously prosecuted its work since that time.   The inspector of combustibles of the fire department on January 22, 1906, and the superintendent of the building department on January 24, 1906, attempted to revoke the respective permits issued by their departments.   The plaintiff at once began the present action to stay the revocation of these permits, and a preliminary injunction was granted therein.

The defendant contends that the construction now carried on by the plaintiff is unauthorized by reason of the invalidity of its franchises and its failure to comply with the conditions imposed upon its franchises. By reason of chapter 10, p. 16, Laws of 1860, the plaintiff, upon its incorporation in 1887, obtained no power to construct a railroad in any street or avenue of New York City.   People ex rel. N. Y. City & Westchester R. Co. v. Commissioners, 81 App. Div. 237, 241, 81 N. Y. Supp. 26; affirmed 176 N. Y. 577, 68 N. E. 1123; People ex rel. N. Y., N. H. & H. R. R. Co. v. Commission, 81 App. Div. 242, 244, 81 N. Y. Supp. 20; affirmed, 175 N. Y. 516, 67 N. E. 1088; Matter of N. Y. District R. Co., 107 N. Y. 42, 54, 14 N. E. 187; Matter of Washington St., A. & P. R. Co., 115 N. Y. 442, 22 N. E. 356.   By its articles of association, however, the plaintiff had legal capacity to acquire power and authority to construct such a railroad, and by virtue of its compliance with certain statutory requirements it is contended that it acquired such power and authority.   The tunnel act provided:

"Whenever, according to the route and plans adopted by any railroad company, heretofore or hereafter formed, under any special act of the Legislature of this state or under chapter one hundred and forty of the Laws of eighteen hundred and fifty, for the building of its railroad, it shall be necessary or proper to build said road, or any part of the same, underground, or to tunnel or bridge any river or waters, it shall be lawful for said company to enter upon and acquire title to and use such lands under water and uplands. * * * Provided, further, that whenever such road, or any part of the same, is intended to be built within the limits of any city or incorporated village of this state, and to run by means of a tunnel underneath any of the streets, roads or public places thereof, the said company, before building the same underneath any of said streets, roads or public places, shall obtain the consent of the owners of one-half in value of the property bounded on the line, and the consent of the board of trustees of the village, by resolution adopted at the regular meeting and entered on the records of said board, and of the proper authorities having control of said streets, roads or public places, * * * and all railroad companies constructing their road or roads under the provisions of this act shall be subject to all the provisions of the general railroad law of 1850."

As to the railroads authorized by it the tunnel act apparently operated to remove the restrictions contained in chapter 10, p. 16, Laws of 1860. Such would seem, upon reading the statutes together, to have been the

effect, and such has been the burden of judicial opinion regarding the tunnel act. Matter of District R. Co., 107 N. Y. 42, 54, 14 N. E. 187; People ex rel. N. Y., N. H. & H. R. R. Co. v. Commissioners, 81 App. Div. 242, 244, 81 N. Y. Supp. 20. An intimation to the same effect appears in section 1943, c. 410, p. 472, Laws of 1882 (consolidation act), which substantially re-enacted the prohibition contained in chapter 10, p. 16, Laws of 1860, "subject to the regulations and restrictions which the Legislature may have granted since the thirtieth day of January, eighteen hundred and sixty, or may hereafter grant or provide." The defendant contends that, since the tunnel act forbids "construction of an open cut railroad in or through any street or public place" it cannot be invoked by the plaintiff, which, by its articles of association and the form of consent which it obtained from the local authorities of Long Island City, is authorized to run partly in open cut. In the absence of evidence of open cut construction "in or throgh any street or public place," this objection seems to be without weight.

Similarly the objection that the articles of association of the plaintiff failed expressly to mention and rely upon the tunnel act is unimportant. If reference were necessary, it was sufficiently made by mentioning the railroad act of 1850 "and the acts amendatory thereto and supplementary thereof." In Matter of District Railway, supra, the New York District Railway Company, having failed to secure the consent of either the local authorities or the owners of abutting property, followed the provisions of the tunnel act and procured the appointment of commissioners by the General Term, and sought to treat their report as a substitute for the consents both of the local authorities and the property owners. It was held that the provisions substituting for the consent of the local authorities the report of commissioners appointed by the General Term were in contravention of section 18, art. 3, of the state Constitution, and, therefore, were unconstitutional. The General Term, however, in the case above mentioned, stated (at page 627 of 42 Hun) that notwithstanding this constitutional defect the company "may obtain the consent of the local authorities and of the requisite number of property-owners. These provisions are valid and separable from what follows." The Court of Appeals also said (at page 55 of 107 N. Y., page 190 of 14 N. E.):

"Very possibly the act may stand as an authority for the construction of an underground street railway upon the condition of the assent of the city authorities and the half of abutting values, and rejecting all the provisions for the appointment of commissioners, whose orders shall be a substitute. Further than that we do not deem it our duty to go."

See Underground R. R. Co. v. City of N. Y., 193 U. S. 416, 426, 24 Sup. Ct. 494, 48 L. Ed. 733.

The rule as to the separability of valid and invalid parts of a statute is stated in Cooley on Constitutional Limitations (7th Ed.) p. 246, as follows:

"Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed the one without

the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained."

See, also, Lewis' Suth. Stat. Const. (2d Ed.) 576.

The rule thus stated is settled in the law of this state. Matter of Fuller, 62 App. Div. 428, 71 N. Y. Supp. 40; Matter of Village of Middletown, 82 N. Y. 196; People ex rel. Devery v. Coler, 173 N. Y. 103, 65 N. E. 956.

Applying to the tunnel act the principle of statutory construction thus established, it appears that the act was valid and constitutional in so far as it authorized a railroad company incorporated under the railroad act of 1850 to build its railroad in a tunnel under the streets of a city with the consent of the local authorities and of the owners of one-half in value of the abutting property. The defendant contends that the requirements of chapter 642, p. 919, Laws 1886 (the so-called "Cantor Act"), which required that franchises to use the streets be sold at public auction to the highest bidder, were obligatory upon the plaintiff and have not been satisfied. During the operation of the Cantor act, the plaintiff, without complying with its provisions, obtained, without bidding or purchasing at public auction, consent from the local authorities to use the streets of New York City. Before the plaintiff obtained from the local authorities consent to use the streets of Long Island City the Cantor act was repealed by chapter 565, p. 1082, Laws 1890 (railroad law), the analogous provisions of which applied only to street surface railroads. Sections 90–109. Before this latter consent was obtained, however, the tunnel act, upon which it depended, had been repealed by the railroad law. Provisions analogous to the tunnel act, framed to avoid the constitutional defect in the tunnel act, had been enacted in the railroad law of 1890, but they were applicable only to corporations "hereafter incorporated." Section 16. At this juncture the consents which the plaintiff had obtained from the local authorities of New York City and Long Island City were perhaps defective. By chapter 702, p. 1450, Laws of 1892, however, which went into effect May 19, 1892, section 16 of the railroad law of 1890 was amended by striking out the words "hereafter incorporated" and inserting the words "including corporations organized under chapter one hundred and forty of the Laws of eighteen hundred and fifty." For the purpose, apparently, of making the provisions of the statute retroactive, the phrasing was altered to read as follows:

"Such road or any part of it may be built within the limits of any city or incorporated village of this state, and run by means of a tunnel underneath any of the streets, roads or public places thereof, provided such corporation shall, before constructing the same underneath any such street, road or public place, have obtained the consent of the owners of one-half in value of the property bounded on the line of such street, road or public place, and the consent of the board of trustees of the village, by a resolution adopted at a

regular meeting and entered on the records of the board, or of the proper authorities of the city having control of such streets, roads or public places."

This purpose could be effectually accomplished by an amendatory act of this character. Town of Duanesburgh v. Jenkins, 57 N. Y. 177; State v. City of Newark, 27 N. J. Law, 185, 197. Since the plaintiff had already obtained, within the meaning of section 16, as amended, the consents of the local authorities of New York City and Long Island City, these consents were, by chapter 702, p. 1450, Laws of 1892, apparently confirmed unto the plaintiff. The defendant attacks the validity of the consents obtained from the local authorities of New York City and Long Island City upon the grounds, first, that the plaintiff had not complied with the necessary formalities to locate the routes described in the consents, and, second, that no consent could be given to a route different from that specified in the articles of association.

In raising the first objection the defendant assumes that a certificate of change of route showing a route different from that mentioned in the articles of association, was necessary in order to accept the consent granted by the local authorities of Long Island City. On January 11, 1892, after obtaining this consent, the plaintiff filed in conformity therewith a certificate of adoption of route, according to section 22, p. 221, of the railroad act of 1850 and section 6, p. 1084, of the railroad act of 1890. Since no map of the route in Long Island City was previously filed, this was not a certificate of change of route within the meaning of section 23, p. 222, of the railroad act of 1850 and section 13, p. 1088, of the railroad act of 1890, and the provisions of those sections seem inapplicable to that certificate.

As to the second objection, it should be noted that the railroad law of 1850 did not require the articles of association to state the route (section 1), and that the articles of association described the route and terminals in merely approximate language. The court is unwilling, therefore, upon the meager affidavits before it, to determine that the consents are so inconsistent with the articles of association as to be invalid. The defendant objects that the consents of property owners have not been procured by the plaintiff in accordance with the statutory requirement. The plaintiff began work in June, 1892. The statute then in force, which required the consent of property owners, was chapter 702, p. 1450, Laws of 1892, the material parts of which are above quoted. Upon the affidavits submitted it appears that prior to constructing its tunnels in any "street, road or public place" the plaintiff procured "the consent of the property owners of one-half in value of the property bounded on the line of such street, road or public place." The contention that the plaintiff should have obtained the consent of the property owners along every street in its route, before beginning to construct in any street, seems without weight. To this point the court has confined itself to the consideration upon the merits of the question of the plaintiff's franchise.

Independent of the foregoing considerations, however, the validity of the plaintiff's franchise, in which a large amount of capital is invested and great public interests are concerned, cannot properly be determined upon affidavits. To resolve this question now against the

plaintiff would permit such interference with the plaintiff's work as would prevent its completion within the time set therefor, upon which its franchise is conditional. The plaintiff will be irremediably damaged if the doubt were now resolved against it. The defendant, on the other hand, cannot be prejudiced by the postponement. For this reason the court may well refuse to determine the question upon the present motion, and, instead, may properly make a restraining order permitting the continuance of the work under the alleged franchise until the question may be tried in court according to the rules of evidence. Upon this ground, as well as upon the merits, the plaintiff's motion for a continuation pendente lite of the preliminary injunction is granted.

Motion granted.